UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Mayer Eisenstein, M.D., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Bankr. No. 13-01449 |
| | ) | Jointly Administered |
| | ) | |
| | ) | |
| Jerry Haugland, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. 13-01050 |
| | ) | |
| Mayer Eisenstein, M.D., | ) | |
| | ) | |
| Defendant. | ) | Judge Jacqueline P. Cox |

**AMENDED MEMORANDUM OPINION**

**I.      Jurisdiction**

Bankruptcy courts have authority to hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under 11 U.S.C. § 157(a) and may enter appropriate orders and judgments, subject to review under 11 U.S.C. § 158.  28 U.S.C. § 157(b)(1).  Title 11 is the United States Bankruptcy Code.  Core proceedings include determinations of the dischargeability of a particular debt, the matter at issue herein.  28 U.S. C. § 157(b)(2)(I).

The federal district courts have original and exclusive jurisdiction of all cases under title 11.  28 U.S.C. § 1334(a).  Generally, district courts have original but not exclusive jurisdiction

of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). The district courts may refer any or all cases under title 11, and any or all proceedings arising under title 11 or arising in or related to a case under title 11, to the bankruptcy judges for the district. 28 U.S.C. § 157(a). Pursuant to that statute the District Court for the Northern District of Illinois has referred its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. Northern District of Illinois Internal Operating Procedure 15(a).

## II. Facts and Background

This matter came before the Court for the trial of an Adversary Complaint filed by Plaintiffs Jeffrey Haugland, as Administrator of the Estate of Hayley Haugland, Deceased and Jeffrey Haugland Individually; Theresa Melton and Robert Melton; Stephen Tremper and the Estate of Dylan Tremper; Donna Williams, Rocky Williams and the Estate of Joshua Williams; Ruth Ann Moritz and Bernard Hans Moritz, Jr., Individually and as Co-Guardians of the Estate of Adam Moritz, a Disabled Minor and Ayesha El-Amin, as Administrator of the Estate of Na'eem Shahid (together, the "Plaintiffs"). The Plaintiffs are personal injury claimants who held medical malpractice claims against Debtor Mayer Eisenstein, M.D. ("Debtor" or "Dr. Eisenstein") in the Circuit Court of Cook County, Illinois when the Debtor and several related entities sought relief under chapter 7 of the Bankruptcy Code on January 15, 2013. The related entities are Comprehensive Integrated Medicine M.D. S.C. (Case No. 13-01440), Comprehensive Integrated Home Health Care Agency, Inc. (Case No. 13-01445), Mayer Eisenstein, M.D.S.C. (Case No. 13-01455) and Home Care Health Agency, Inc. (Case No. 13-01458).

Debtor Mayer Eisenstein is both a physician and an attorney.

On March 5, 2013, this Court ordered the joint administration of the five related bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 1015(b).

The lawsuits listed below were consolidated in the Circuit Court of Cook County, Illinois under case number 07 L 99 on April 4, 2007:

*El-Amin v. Mayer Eisenstein, M.D.S.C., et al.*, 07 L 99;

*Tremper v. Mayer Eisenstein, M.D., et al.* 06 L 11570, 05 L 10761, 04 L 11131, 03 L 00971 and 07 L 11437;

*Moritz v. Gelb*, 06 L 7010;

*Williams v. Mayer Eisenstein, M.D.S.C. et al.*, 05 L 12346;

*Louis Weiss Hospital Memorial Hospital v. Rosi, et al.*, 06 L 7938;

*Shelton v. Mayer Eisenstein, M.D., et al.*, 05 L 9843;

*Melton v. Homefirst Health Services, et al.*, 03 L 15830 and

*Haugland v. Zumhagen, et al.*, 99 L 4763.

*See* Adversary Complaint 13-1050, ¶ 5.

The lawsuits are medical malpractice claims against the Debtor, his employees and entities he owned. The Plaintiffs moved collectively herein to except their debts from discharge as they assert a right to relief jointly, severally, or in the alternative with respect to the same transaction, occurrence, or series of transactions, the Debtor's fraud regarding the terms of a July 21, 2008 court order that set out the terms of a settlement entered into between them and Dr. Eisenstein. The effort to have the debts incurred in that order held to be not dischargeable involves questions of law and fact common to all Plaintiffs. Federal Rule of Bankruptcy Procedure 7020 provides that Rule 20 of the Federal Rules of Civil Procedure applies in

adversary proceedings. Rule 20(a) states:

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>
> > (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > (B) any question of law or fact common to all plaintiffs will arise in the action.

The Plaintiffs complain in Count I of their Adversary Complaint that the Debtor made fraudulent statements in a June 20, 2008 Terms of Agreement document, which resulted in the entry of a July 21, 2008 settlement order in state court. The problem is that he falsely stated that the settlement would be secured by property at 1101 Dodge, Evanston, Illinois ("Dodge Property") in violation of 11 U.S.C. § 523(a)(2)(A) which excepts from discharge debts incurred fraudulently under certain circumstances. The Debtor did not arrange for the property to be titled in a land trust as required by the 2008 court order. The Plaintiffs complain in Count II (later withdrawn) that the Debtor made a false statement as to whether their claims were covered by insurance. They complain in Count III that the Debtor wilfully and maliciously injured them in violation of 11 U.S.C. § 523(a)(6). Following a seven-day trial, the court took the matter under advisement.

For the reasons noted herein, the debts owed the Plaintiffs are found to be not dischargeable.

On February 24, 2004, Plaintiff Ayesha El-Amin secured a $30,000,000 verdict against the Debtor and other defendants on various medical negligence claims. Following that verdict, on July 14, 2004, Debtors Mayer Eisenstein M.D.S.C. and Home Care Health Agency, Inc. filed for bankruptcy relief under chapter 11 of the Bankruptcy Code. *See* Bankruptcy Cases

4

04-26216 and 04-26224 (Jointly Administered). On June 10, 2006, a dismissal order was entered therein; by its terms that order became effective on July 13, 2006. Bankruptcy Case number 04-26216 (Jointly Administered), Docket Number 263.

On June 11, 2007, a former Chief Judge of the Circuit Court of Cook County, Illinois held a mediation session with the parties. The parties reached agreement on a term sheet which was amended several times until the Presiding Judge of the Law Division entered a July 21, 2008 order which reflected an aggregate settlement of the Plaintiffs' claims. The July 21, 2008 order stated as follows:

> This matter coming to be heard for Status, due notice having been given and the Court being fully advised, IT IS HEREBY ORDERED THAT:
>
> Pending the execution of a settlement agreement, the parties through counsel agree as follows:
>
> 1. The settlement amount is to be paid as follows:
>
>     a. On or before September 22, 2008, $100,000.00;
>     b. On or before September 22, 2009, $100,000.00;
>     c. On or before September 22, 2010, $100,000.00;
>     d. On or before September 22, 2011, $130,000.00;
>     e. On or before September 22, 2012, $140,000.00;
>     f. On or before September 22, 2013, $150,000.00;
>     g. On or before September 22, 2014, $160,000.00;
>     h. On or before September 22, 1015, $395,000.00.
>
> 2. Defendants reserve the option between the third and fourth payment to pay the present value of the remaining amount of the settlement, such present value calculation to be litigated by this Court;
>
> 3. Defendants agree to title the property securing the settlement, 1101 Dodge, Evanston, IL in a land trust, with the executed settlement agreement serving as the direction to the trustee in the event of a default;

> 4. Motions to distribute settlement proceeds are to be brought before Judge Maddux;
>
> 5. This settlement is approved;
>
> 6. Plaintiffs are to have secured creditor status in the event of an applicable bankruptcy filing;
>
> 7. This court retains jurisdiction to effectuate the settlement, including enforcement, adjudication of liens, approval where necessary and any other pendant matters.

*See* Plaintiffs' Exhibit 2.

The order was drafted by the Debtor's attorneys from the Arnstein & Lehr law firm. That firm represented the Debtor's related entities in the 2004 bankruptcy cases. While the order stated that the parties agreed to the terms therein pending the execution of a settlement agreement, no such agreement was executed. Dr. Eisenstein's defense, in part, to this challenge to the dischargeability of a debt, is that because that was not done, there was no settlement agreement. *See* October 29, 2014 Transcript ("Transcript"), pp. 629-630 where the Debtor stated that the matter had not settled, while admitting that he made payments called for in the July 21, 2008 order.

In 2008, when $100,000 was due according to the July 21, 2008 order, Dr. Eisenstein paid the Plaintiffs $100,000. In 2009, when $100,000 was due, Dr. Eisenstein paid the Plaintiffs $100,000. In 2010, when $100,000 was due, Dr. Eisenstein paid the Plaintiffs $100,000. In 2011, when $130,000 was due, Dr. Eisenstein paid the Plaintiffs $130,000. Payment of the amounts due according to the terms of the order belie Dr. Eisenstein's defense that there was no settlement agreement. Dr. Eisenstein has not offered any credible reason to explain his decision

to make payments totaling $430,000 when according to him, no settlement was ever consummated. His actions belie his defense.

The Rider to Debtor's Schedule F of Creditors Holding Unsecured Nonpriority Claims also belies his position that the matters had not settled. It states:

> In the first quarter of 2004, a jury verdict of $31,000,000.00 was returned against the Debtor and other party defendants. In recognition of the insolvency of certain party defendants, on July 21, 2008, the court approved a $1.275 million dollar settlement which must be divided among the six claimants over a period of seven (7) years. Under the terms of the settlement, each of the claimants is entitled to a prorated portion of the settlement proceeds. At the time of the filing of this bankruptcy case, $845,000.00 remained unpaid under the settlement. A copy of the July 21, 2008 Order approving the settlement amount and the payment terms follows this page.

*See* Bankruptcy Case. No. 13-1449, Docket Number 19, p. 29.

The Rider states affirmatively that the court approved a $1.275 million dollar settlement. It does not dispute the existence of the settlement.

Paragraph 17 of the Adversary complaint alleges:

"[t]he aggregate Settlement amount of $1,275,000 represents a small fraction of the total of claims by the Personal Injury Plaintiffs, some of which had reached verdict and judgment.

The Debtor answered paragraph 17 of the adversary complaint as follows:

ANSWER: For his answer to Paragraph 17 of Plaintiffs' Complaint, Defendant admits that the settlement amount of $1,275,000.00 was significantly less than the total amount of all of the claims which were being asserted by Plaintiffs. For further answer, Defendant affirmatively states that only one (1) of the claims went to trial and reached a verdict and judgment.

The Debtor did not deny the existence of the settlement agreement in this portion of his Answer. This may be an admission that the settlement agreement exists.

The crux of Dr. Eisenstein's defense is that he did not agree to the terms reflected in the

July 21, 2008 order, that his attorneys did not have authority to bind him regarding that order and that in any event there was no deal until the execution of a formal settlement agreement. However, execution of a subsequent settlement agreement was not necessary to bind Dr. Eisenstein. The Debtor's acceptance of the benefits of the July 21, 2008 order bound him to its terms.

Dr. Eisenstein's attorney in the underlying state court matter testified herein that the Debtor was sent a draft of the July 21, 2008 order a week before it was entered; he did not object to it. October 24, 2014 Transcript, pp. 430-433. He stated that at no point did the Debtor disavow the terms of the July 21, 2008 order. *Id.*, at pp. 435-436. It was his understanding that the terms were agreed to by all parties. He noted that the Debtor sent the law firm a document that he called the 1101 Dodge valuation from a broker. October 24, 2014 Transcript, pp. 410-412. The law firm put preparation of the final agreement on hold because it had not been paid. *Id.*, at p. 441. The July 21, 2008 order was entered with the Debtor's knowledge; he authorized its entry. *Id.*, at pp. 456-457.

On June 20, 2008 at 10:35 a.m., Dr. Eisenstein's attorney sent him by email a redlined version of the terms of the settlement that came to be part of the July 21, 2008 order, with downward adjustments of the amounts due each year. His attorney asked Dr. Eisenstein to contact him to confirm "that this is the agreement I should forward to the plaintiffs' group." Plaintiffs' Exhibit 19. Ten minutes later on June 20, 2008 at 10:45 a.m., Dr. Eisenstein sent his attorney an email stating that "[i]t looks workable." Plaintiffs' Exhibit 20. This evidence rebuts his position that there was no settlement and that his law firm did not have authority to bind him to the terms of the July 21, 2008 order. Rather, it indicates that he knew of the terms and did not

tell his attorneys not to bind him to them.

## III. Discussion

### A. The Parties Entered into an Enforceable Settlement Agreement

The evidence shows that Dr. Eisenstein accepted the terms reflected in the July 21, 2008 order. That order created a debt owed to the Plaintiffs. Dr. Eisenstein acquiesced in the terms later included in the July 21, 2008 order, when with full knowledge of them, he did not object to them or offer alternative terms. Even if his law firm did not have his express consent to enter into the settlement terms reflected in the July 21, 2008 order, Dr. Eisenstein's acceptance of the benefits of the order ratified his law firm's conduct on his behalf - telling the Law Division Presiding Judge that the matter had settled according to the terms in the order submitted by his law firm. Dr. Eisenstein ratified his law firm's conduct when he failed to repudiate his law firm's conduct once he had knowledge of what it would present to the state court. The Seventh Circuit Court of Appeals has held that "[w]here an agent acts without the authority to enter into a contract on the principal's behalf, the contract may still be ratified by the principal." *Sphere Drake Ins. Ltd. v. American General Life Insurance Co.*, 376 F. 3d 664, 677 (7th Cir. 2004). A principal ratifies his agent's actions by not repudiating them or by accepting their benefit. *Sphere*, (citing *Amcore Bank, N.A. v. Hahnaman-Albrecht, Inc.* 326 Ill App. 3d 126, 759 N.E. 2d 174 (2001)). "'Ratification may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction.'" *Id.*, (quoting *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844 (1998).

Herein, the Debtor ratified his law firm's conduct by accepting the benefits of the settlement terms.

The Debtor testified that he has no assets but that his wife holds title to several assets. Had they not relied on the settlement order the Plaintiffs could have sought relief awarding them access to those assets. If the Debtor genuinely believed that no settlement had been reached, he would not have paid the four installments due under the July 21, 2008 order.

**B.     Count I:    Fraudulent Statement in the Terms of Agreement Document and the Order of July 21, 2008 - 11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The goal of bankruptcy is to give debtors a fresh start; debts are presumed dischargeable unless proved nondischargeable. The burden of proving an exception to discharge rests with the objecting creditor who must establish nondischargeability by a preponderance of the evidence. *Grogan v. Carter*, 498 U.S. 279, 286-87 (1991).

Section 523(a)(2)(A) provides three separate grounds for holding a debt to be nondischargeable: false pretenses, false representation and actual fraud. *Sargis v. Aguilar*, 511 B.R. 507, 512-514 (Bankr. N.D. Ill. 2014); *In re Casali*, 517 B.R. 835, 841 (Bankr. N.D. Ill. 2014) (citing *In re Jairath*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001)); *Bank of Commerce v. Strauss (In re Strauss)*, 2014 WL 7287889, at *9 (Bankr. N.D. Ill. 2014).

To deny the discharge of a debt under Section 523(a)(2)(A) a creditor must show (1) the debtor made a false representation (2) that the debtor (a) knew the representation was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, and (3)

10

upon which the creditor justifiably relied. *In re Scarlatta*, 979 F.2d 521, 525 (7th Cir. 1992); *Ojeda v. Goldberg*, 599 F.3d 712, 716-717 (7th Cir. 2010). A debtor's fraudulent omission can support a false representation claim. *Ojeda*, 599 F.3d 717. A debtor's failure to disclose pertinent information may be a false representation where the circumstances imply a specific set of facts and disclosure is necessary to correct what would otherwise be a false impression. *In re Glenn*, 502 B.R. 516, 530 (Bankr. N.D. Ill. 2013).

### 1. False Representation Made by Debtor

A false representation is an express misrepresentation demonstrated either by a spoken or written statement or through conduct. *Nicolas & Assoc. v. Morgan (In re Morgan)*, 2011 WL 3651327, at *4 (Bankr. N.D. Ill. Aug. 18, 2011). A debtor's silence concerning a material fact can constitute a false misrepresentation. *Morgan*, at *4.

The Court determines that Dr. Eisenstein made a false representation when he promised to give the Plaintiffs a secured interest in the Dodge Property when he had no intention of ever doing so. He testified herein that he was waiting for the execution of a settlement agreement when in fact there was no need for one. He claims that he did not want to get his wife's consent to pledge the property until the settlement agreement was done. Transcript, October 29, 2014, pp. 685-86. However, the court order does not condition the Debtor's obligation to procure the security interest on obtaining his wife's consent or the execution of an agreement. The court notes that the settlement agreement the Debtor claimed to be waiting on would likely have the same terms as the order.

The Debtor claims that the order was bogus, yet he testified that he never told his attorneys that he would not pledge the Dodge Property even though he reviewed the order before

11

and after it was entered. October 29, 2014 Transcript, pp. 746, 752.

The Debtor also promised to schedule the Plaintiffs as secured creditors should a bankruptcy case be filed. That was not done. However, the parties can not require a debtor to make certain representations in his or her schedules. The schedules must be prepared accurately, not according to promises made pre-petition. That failure will not be considered as a ground for dischargeability.

The Court further finds that Dr. Eisenstein's silence when he claims that he did not consent to the settlement terms while making many of the payments called for by it, is conduct that falsely represented that he would title the Dodge Property into a land trust as required by the July 21, 2008 order. His silence concerning his intention to not follow through on the pledge of the Dodge Property while making payments was misleading to the Plaintiffs for whom the pledge was important as security. This Court does not believe the Debtor's testimony that he could not title the Dodge Property as required. The failure to produce a "final settlement agreement" was a mere formality, not an obstacle that obviated the terms of the July 21, 2008 settlement order.

### i.     Representation Made with Knowledge of its Falsity

The Debtor's testimony herein lacked credibility. He said the order was "bogus," however, he did not tell his attorney that he did not consent to the terms stated therein. He denied knowing of the payments made according to the terms of the order even though he paid those amounts. Transcript, October 29, 2014, p. 691. He testified that the pledge was to be made after the settlement was acknowledged in writing even though the order contained no such provision. He equivocated endlessly about a broker's opinion letter he obtained to help the parties assess whether the Dodge Property had any equity. *Id.,* at pp. 693, 812, 816. It is often

difficult to discern a person's intent, however, such can be proven by circumstantial evidence. The Debtor's endless misrepresentations at trial are proof of his knowledge at the relevant time in 2008 that his representation was false, his intent to deceive and that he never intended to pledge the property.

### 2. Justifiable Reliance

To satisfy the reliance element of section 523(a)(2)(A) a creditor has to show that the debtor made a material misrepresentation that was the cause-in-fact of the debt the creditor wants excepted from discharge. "Reliance means the conjunction of a material misrepresentation with causation in fact." *In re Mayer*, 51 F.3d 670, 676 (7th Cir. 1995). This means that the debtor's conduct proximately caused the creditor's loss. *In re Luster*, 50 F.Appx. 781, 784 (7th Cir. 2002). The Debtor's misrepresentation, false pretenses and actual fraud caused the debt owed the Plaintiffs herein. Promising to give them a security interest in the Dodge Property when he knew that he would not do so until something not required by the order was done, caused the debt and caused the Plaintiffs' loss herein, loss of status/priority as secured creditors.

The Debtor argues, without any relevant authority, that the Plaintiffs knew that the Debtor did not own the Dodge Property and should have done more to follow up on whether the security interest had been obtained. The Court disagrees, as the Plaintiffs' reliance on the statements made by the Debtor and Debtor's attorneys throughout the state court proceedings was justifiable under the circumstances.

While the Seventh Circuit described the third element of a fraud claim as "reasonable" reliance in *Scarlatta*, the Supreme Court later ruled that Section 523(a)(2)(A) requires only "justifiable" reliance. *Field v. Mans*, 516 U.S. 59, 73-76 (1995). Reliance must have been

actual and justifiable. Actual reliance means that the omission caused the debt. Justifiable reliance raises the requirement beyond bare causation and requires only that the creditor not blindly rely upon a misrepresentation or omission the falsity of which would be patent to him if he had made a cursory investigation. *Field*, 516 U.S. at 71.

The Plaintiffs have met their burden of establishing that the Debtor made a false omission, that he knew it was false and that their reliance on it was justified. The Debtor knowingly agreed to put the Dodge Property into a land trust for which the settlement agreement would serve as direction to the trustee. He did not arrange to have that property put into a land trust. The Debtor testified that he never sought his wife's permission to do so; he didn't even try. October 29, 2014 Transcript, pp. 685-686 and 701-702. He claimed that he was waiting to get a final agreement signed. He did not, however, wait to make four of the annual payments due under the order, misleading the Plaintiffs and causing them to continue to rely on the promises made to get them to agree to the terms of the July 21, 2008 order. The attorney for Plaintiff Ayesha El-Amin, Mr. Heath, and the other Plaintiffs' attorneys testified that because the payments were to be made over time by the Debtor, the security interest noted in the order was important. Transcript, October 22, 2014, p. 42. The evidence shows that the Plaintiffs relied upon the representations made by Dr. Eisenstein, and his attorneys, that the security interest would be procured. Plaintiff Ayesha El-Amin could have finalized her $30,000,000 judgment and pursued assets his wife held in trust instead of settling her claim for a small fraction of its value. The other Plaintiffs could have reduced their claims to verdicts. The Debtor knew that he had no intention in 2008 of putting the Dodge Property into a land trust as required by the order. The Plaintiffs' reliance was justifiable. They had no reason to suspect that anything was amiss

while receiving several substantial annual payments called for by the order.

The Plaintiffs justifiably relied on the Debtor's promise to give them a security interest.

They did not blindly rely on the false misrepresentation; receipt of the payments meant to them that the settlement was in force. While receiving those payments, the Plaintiffs were not put on notice of the Debtor's intent to deceive them. The Debtor knew that the Plaintiffs thought the July 21, 2008 order settled their claims when he had no intention of observing his pledge to secure the settlement with the Dodge Property.

### 3. False Pretenses

False pretenses under Section 523(a)(2)(A) "include misrepresentations of conduct intended to create or foster a false impression." *Morgan,* at 4. (debtor-contractor, in falsely representing that all subcontractors had been paid for purposes of receiving payments on construction project, made material misrepresentations with requisite fraudulent intent). A false pretense does not require an overt misrepresentation. *Mem'l Hosp. v. Sarama (In re Sarama)* 192 B.R. 922, 927-928 (Bankr. N.D. Ill. 1996). "Omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that the omissions or failure to disclose create a false impression which is known by the debtor." *Sarama,* 192 B.R. at 928. "A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A 'false pretense' is established or fostered willfully, knowingly and by design; it is not the result of inadvertence." *Sarama,* 192 B.R. at 927-928 citing *Evans v. Dunston (In re Dunston),* 117 B.R. 632, 641 (D.Colo. 1992).

The Debtor falsely stated that he agreed to the terms in the July 21, 2008 order when he knew, as he testified, that he had no intention of arranging to have the Dodge Property put into a land trust. He testified that in 2008, title to the Dodge Property was held in a land trust in which his wife was the beneficiary and that he never asked his wife to follow through on his pledge of the property as security for the settlement agreement. He said that he did not intend to provide a security interest. October 29, 2014 Transcript, pp. 801-802. He gave this false impression with the intent to deceive the Plaintiffs.

### 4. Actual Fraud

To establish a claim for actual fraud under § 523(a)(2)(A), a plaintiff must prove that (1) fraud occurred, (2) the debtor intended to defraud and (3) the fraud created the debt. *Wachovia Securities, LLC v. Jahelka (In re Jahelka),* 442 B.R. 663, 669 (Bankr. N.D. Ill. 2010). Dr. Eisenstein committed actual fraud. The fraud occurred when he knew in 2008 that he had no intention of titling the Dodge Property into a land trust with a direction to the trustee in the event of a default. This fraud continued for several years. He claims that he was waiting to be sent a formal settlement agreement and that the Plaintiffs' failure to further document the settlement means that there was no settlement. However, under the circumstances herein, failure to further reduce the terms of the settlement to writing does not mean that the settlement did not exist and that it can not be enforced. In *TRT Transportation, Inc. v. Aksoy,* 506 Fed.Appx. 511 (7th Cir. 2013), the Seventh Circuit held that under Illinois law the failure of a trolley company and its competitor to reduce the terms of an oral settlement agreement to writing did not preclude the enforcement of the settlement agreement, even though the competitor stated that the settlement was subject to negotiation of a formal settlement agreement in an agreed injunction, where the

parties stated the terms that would be included in the settlement agreement, and that those terms would be enforceable. The parties initially made progress in drafting a written agreement, but they failed to produce a settlement agreement. The defendants filed a motion for declaration of the absence of an enforceable settlement agreement. The plaintiff moved to enforce the settlement. The district court found that the parties had reached an enforceable agreement in a settlement conference with a magistrate judge.

The Court finds that the Debtor intended to mislead the Plaintiffs and that fraud created the debt. The evidence suggests that Dr. Eisenstein hoped to make all of the payments required by the order, and to not ever get to a point when the Plaintiffs would access the security, the Dodge Property.

If the Debtor intended when making the promise to put the Dodge Property into a land trust as required by the July 21, 2008 order, but later decided that he could not or would not so perform, his initial representation was not false when made. *In re Oakley* 503 BR 407, 433 (Bankr. E.D. Pa. 2013) (a creditor's proof that a debtor breached a contract, by itself, does not render the contract claim nondischargeable). The fact that Dr. Eisenstein never spoke with his wife about pledging the Dodge Property to secure the payments to the Plaintiffs indicates that he never intended to follow through on his announced pledge regarding it. His failure regarding the Dodge Property was fraudulent from the inception of the debt, justifying a finding that the debt involved is not dischargeable as actual fraud.

### B. Count III Wilful and Malicious Injury 11 U.S.C. § 523(a)(6)

To prevail on a section 523(a)(6) claim of nondischargeability a creditor has to show that the debt was for wilful and malicious injury by the debtor to another entity or to the property of another entity. The Supreme Court has held that a section 523(a)(6) exception to discharge "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauahu v. Geiger,* 523 U.S. 57, 61 (1998). Malicious intent in section 523(a)(6) means something done in conscious disregard of one's duties or without just cause or excuse. *In re Larson,* 442 B.R. 905, 914 (E.D. Wisc. 2010). The Debtor consciously disregarded his duty and intended the injury that he caused, leaving the Plaintiffs without the bargained-for security interest so important to them.

## VI. Affirmative Defenses

Affirmative Defense 1 that there was no settlement agreement fails. As explained herein, the Debtor's acceptance of the benefits of the July 21, 2008 order indicates his acceptance of the terms stated therein. The order's terms represent the terms of the settlement.

Affirmative Defense 2 that the July 21, 2008 order is of no force fails. The order binds the parties.

Affirmative Defense 3 that his attorneys could not bind him to the term sheet and the order fails. His attorneys were his agents. The Debtor ratified his attorneys' conduct by accepting the benefits of the settlement order.

Affirmative Defense 4 that the Statute of Frauds provides that no action concerning a contract for the sale of lands or any interest therein can proceed unless it shall be in writing fails. The Plaintiffs are not directly asking to enforce a contract for an interest in lands, but only to

have a settlement obligation declared to be not dischargeable.

In addition, the Debtor's partial performance of his settlement obligations, making four of the required payments, makes the Statute of Frauds inapplicable. *Forsythe v. Yeley,* 508 B.R. 82, 89 n. 3. (S.D. Ind. 2014).

Affirmative Defense 5 that the Plaintiffs are barred under the doctrine of laches and have waived their rights to their claims for various reasons fails. The Plaintiffs justifiably relied on the Debtor's conduct in not investigating the circumstances herein.

Affirmative Defense 6 that there is no equity in the Evanston Property fails. The evidence did not conclusively show that at the relevant time, in 2008, that there was no equity in the property. In any event, the Debtor's conduct in guaranteeing a mortgage obligation on that property may have contributed to the lack of equity therein.

**VII.   Conclusion**

The Plaintiffs have met their burden of proving by a preponderance of the evidence that the Debtor made a false representation, committed both a false pretense and actual fraud. The debts owed to the Plaintiffs are not dischargeable under both 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6).

The February 4, 2015 Judgment Order stands.

Dated: February 11, 2015                                 ENTER:

                                                         *Jacqueline P. Cox*
                                                         Jacqueline P. Cox
                                                         U.S. Bankruptcy Judge